UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RODOLFO QUINTANA-ISLAS,

                Petitioner,

    v.

CRAIG LOWE, et al.,

                Respondents.

CIVIL ACTION NO. 3:26-CV-01283

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Rodolfo Quintana-Islas ("Quintana-Islas") brings this petition for writ of habeas corpus. (Doc. 1). On May 13, 2026, Quintana-Islas filed the instant petition, requesting that Respondents Craig Lowe, John Rife, Todd Lyons, Markwayne Mullin, and Todd Blanche[1] release him from custody at the Pike County Correctional Facility in Lords Valley, Pennsylvania or provide him with an immediate bond hearing. (Doc. 1, at 23). On May 20, 2026, Lowe filed a response to Quintana-Islas's petition (Doc. 6), and on May 21,

---

[1] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Craig Lowe ("Lowe"), Warden of the Pike County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Quintana-Islas is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 4); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents John Rife, Todd Lyons, Markwayne Mullin, and Todd Blanche are **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Quintana-Islas on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

2026, Quintana-Islas filed a traverse. (Doc. 7). For the following reasons, Quintana-Islas's petition (Doc. 1) is **GRANTED**, and Lowe is **ORDERED** to release Quintana-Islas from custody.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Quintana-Islas's petition, Lowe's response, and the exhibits thereto. (Doc. 1; Doc. 6). Quintana-Islas entered the United States without inspection, admission, or parole, somewhere near Nogales, Arizona, around January 2006. (Doc. 1, at 7; Doc. 6, at 5). Quintana-Islas first encountered ICE on November 30, 2017, when ICE officers arrested Quintana-Islas and issued him a notice to appear. (Doc. 1, at 7; Doc. 6, at 5). On December 14, 2017, an immigration judge released Quintana-Islas from ICE custody under a $5,000 bond. (Doc. 1, at 7; Doc. 6, at 5). In 2018, Quintana-Islas requested adjustment of status from the United States Citizenship and Immigration Services ("USCIS"). (Doc. 6, at 5). In 2023, Quintana-Islas applied to the Department of Homeland Security ("DHS") for cancellation of removal. (Doc. 6, at 5).

On February 17, 2026, ICE conducted a targeted enforcement operation and arrested Quintana-Islas for violating the Immigration and Nationality Act ("INA") and the terms of his bond release. (Doc. 6, at 5). Quintana-Islas had become known to ICE from two previous incidents of driving under the influence ("DUI") in November 2014 and November 2025. (Doc. 6, at 5-6; Doc. 7-2). After the February 17, 2026 arrest, ICE transported Quintana-Islas to the Pike County Correctional Facility, where he remains detained. (Doc. 1, at 8). On May 11, 2026, an immigration judge denied Quintana-Islas's motion for custody redetermination for lack of jurisdiction. (Doc. 1, at 2). Quintana-Islas has been in ICE custody for over three months, and he has a master hearing scheduled in immigration court on June 8, 2026. (Doc.

2

6, at 6). Quintana-Islas submits that prior to his February 17, 2026 arrest, he worked with authorization in Duryea, Pennsylvania, where he lived with his long-term partner and five United States citizen children. (Doc. 1, at 7).

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et*

*al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

### III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the INA strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability

will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction over Quintana-Islas's habeas petition because the legal questions of whether § 1225(b) or § 1226(a) applies to Quintana-Islas and whether Quintana-Islas is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

## IV.   DISCUSSION

Quintana-Islas contends that his prolonged mandatory detention is in violation of the INA, Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act. (Doc. 1, at 19-22). Quintana-Islas avers that he is entitled to release or an individualized bond determination pursuant to 8 U.S.C. § 1226(a). (Doc. 1, at 17-19). Lowe counters that Quintana-Islas is properly detained without an opportunity for bond under 8 U.S.C. § 1225(b)(2)(A) because he is present in the United States without having been lawfully admitted. (Doc. 6, at 18). Lowe also contends that Quintana-Islas's detention under 8 U.S.C.

§ 1225(b)(2)(A) does not violate the Due Process Clause of the Fifth Amendment because Quintana-Islas, a noncitizen without admission, is limited to the due process rights provided by the INA. (Doc. 6, at 18). The Court will first address whether Quintana-Islas was properly detained under § 1225(b)(2)(A). The Court will then address whether Quintana-Islas's detention violates due process.[2]

A. LOWE IMPROPERLY DETAINED QUINTANA-ISLAS UNDER 8 U.S.C. 1225(B)(2)(A).

Lowe improperly detained Quintana-Islas under 8 U.S.C. § 1225(b)(2)(A), when Lowe should have detained Quintana-Islas under 8 U.S.C. § 1226(a). Quintana-Islas avers that noncitizens who previously entered and resided in the United States before ICE apprehended them are subject to detention under § 1226(a) and are entitled to a bond hearing. (Doc. 1, at 8-13). Lowe counters that Quintana-Islas is properly detained under § 1225(b)(2)(A), which mandates the detention of noncitizens who are present in the United States without lawful admission. (Doc. 6, at 17). Lowe reasons that while Quintana-Islas was previously detained under 8 U.S.C. § 1226(a) in November 2017, that detention occurred prior to the decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-23 (BIA 2025), which found that noncitizens in the interior of the United States without admission or parole are subject to mandatory detention under § 1225(b)(2)(A). (Doc. 6, at 17 n. 5). Lowe contends that as a result of Quintana-Islas's November 2025 DUI arrest, the government terminated Quintana-Islas's

---

[2] The Court notes that Quintana-Islas also claims relief under the Administrative Procedure Act ("APA"). (Doc. 1, at 22). As the Court grants the petition on the basis that Quintana-Islas's detention is unlawful under the INA and violates his due process rights, the Court declines to consider Quintana-Islas's APA arguments at this time. *See Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *9 n. 6 (D.N.J. Oct. 22, 2025); *see Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *5 (E.D. Pa. Nov. 18, 2025); *see Kashranov*, 2025 WL 3188399, at *8; *see also Ramirez v. Jamison*, No. 2:25-cv-7346, 2026 WL 196474, at *19 (E.D. Pa. Jan. 26, 2026).

bond, giving the government a second, independently adequate basis to detain Quintana-Islas. (Doc. 1, at 17-18). Lowe avers that because Quintana-Islas's February 2026 arrest occurred after *Hurtado*, Quintana-Islas, a noncitizen in the United States without admission or parole, is now lawfully detained under § 1225(b)(2)(A). (Doc. 6, at 17 n. 5); 29 I. & N. Dec. at 222-23. In his traverse, Quintana-Islas provides that the government did not properly revoke his 2017 bond because it failed to either ask an immigration judge to reconsider the 2017 bond decision or demonstrate circumstances justifying the revocation. (Doc. 7, at 4-5).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Hurtado*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov*, 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid v. Bondi*, No 3:25-cv-00304, 2025 WL 2985150, at *16 n. 7 (W.D. Pa. Oct. 23, 2025); *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa*

8

*v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 807 F. Supp. 3d at 407. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[3] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or

---

[3] The Court acknowledges that the Fifth Circuit and Eighth Circuit recently issued decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) respectively, both holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* and *Avila* are not binding on the Court.

immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

If an immigration judge grants a noncitizen detainee parole for the duration of removal proceedings, that parole can be revoked through reconsideration from the immigration judge that granted parole or with notice from an immigration field of director upon breach of parole conditions. 8 C.F.R. § 1003.19(e); 8 C.F.R. § 103.6(e); *N-N v. McShane*, 813 F. Supp. 3d 496, 500 (E.D. Pa. 2025). Under both approaches, no change should be made to a previous bond determination absent a change in circumstances, such as a breach of the bond conditions. *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 275 (3d Cir. 2018); *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); *Aguilar v. United States*, 124 Fed. Cl. 9, 15 (2015).

On July 8, 2025, ICE and the Department of Justice announced a new practice, in which all applicants for admission, regardless of when the noncitizens were apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited May 27, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings.

*Cantu-Cortes*, 2025 WL 3171639, at *2 (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but was "already here"); *Del Cid v. Bondi,* 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 807 F. Supp. 3d at 408 (collecting cases).

Section 1226(a), not § 1225(b)(2)(A), applies to Quintana-Islas's detention. Based on the record before the Court, the government failed to properly revoke Quintana-Islas's existing bond. (Doc. 6, at 17; Doc. 7, at 4-5). Quintana-Islas's bond was granted by an immigration judge in 2017, with no stipulated conditions. (Doc. 7, at 5). While the government avers that Quintana-Islas's bond was terminated because of Quintana-Islas's DUI arrest, the government provides no evidence that it sought a modification of the bond from an immigration judge or provided any notice to Quintana-Islas of breach of bond conditions. (Doc. 6, at 17). In fact, ICE did not take Quintana-Islas into custody until three months after the DUI arrest. (Doc. 6, at 6). Accordingly, Quintana-Islas should still be under the bond conditions provided by the immigration judge in 2017. 8 C.F.R. § 1003.19(e); 8 C.F.R. § 103.6(e); *see Borbot*, 906 F.3d at 275; *see Matter of Sugay*, 17 I. & N. Dec. at 640; *see also Aguilar*, 124 Fed. Cl. at 15.

Even if, the government properly cancelled Quintana-Islas's 2017 bond, Quintana-Islas should still be detained under § 1226(a) because he lived in the United States for 20 years prior to his ICE arrest on February 17, 2026. (Doc. 1, at 7). Section 1225(b)(2)(A) does not

11

apply to Quintana-Islas's detention because Quintana-Islas is not seeking admission into the United States. Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez*, 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at *6; *see also* 807 F. Supp. 3d 397, at 400, 408 (collecting cases). Quintana-Islas is not actively attempting to come into the United States. Quintana Islas has lived in the United States since January 2006. (Doc. 1, at 7). Based on the plain meaning of the phrase "seeking admission," Quintana-Islas sought admission when he entered the United States in 2006. (Doc. 1, at 7); *see Kashranov,* 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). Instead, § 1226(a) applies to applicants for admission, like Quintana-Islas, who are not actively seeking admission but who have been residing in the United States for an extended period. *See Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but "already here"); *see also Soto,* 807 F. Supp. 3d at 400, 408 (collecting cases). Accordingly, after the February 17, 2026 ICE arrest, Lowe improperly detained Quintana-Islas under § 1225(b)(2)(A), when she should have detained Quintana-Islas under § 1226(a).

    B. Lowe Violated Quintana-Islas's Due Process Rights By Improperly Subjecting Quintana-Islas to Mandatory Detention.

Lowe's continued mandatory detention of Quintana-Islas under § 1225(b)(2)(A) violates Quintana-Islas's procedural due process rights. Quintana-Islas avers that civil detention without opportunity for an individualized custody determination violates the due process protections guaranteed by the Fifth Amendment. (Doc. 1, at 20). Lowe counters that

the Quintana-Islas's detention does not offend due process because Quintana-Islas has ample process available to him in his current removal proceedings. (Doc. 6, at 47). Lowe also avers that Quintana-Islas is only entitled to due process afforded to applicants for admission by the INA. (Doc. 6, at 18).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Quintana-Islas's favor because Lowe has deprived Quintana-Islas of his physical liberty with improper detention without the possibility of bond under § 1225(b)(2)(A). (Doc. 1, at 21); *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects); *Soto*, 807 F. Supp. 3d at 409. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Quintana-Islas's favor because Quintana-Islas

remains erroneously detained without the possibility of release on bond pursuant to § 1225(b)(2)(A). *See Soto*, 807 F. Supp. 3d at 409 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Quintana-Islas's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 807 F. Supp. 3d at 409-10. Here, Quintana-Islas poses no such risk to the government's interest in detaining him. Lowe does not allege that Quintana-Islas poses a flight risk or danger to the community. (*See* Doc. 6). Further, Quintana-Islas has demonstrated compliance with the immigration process by following the requirements of his removal proceedings, which have been ongoing since 2017. (Doc. 1, at 8). As each *Mathews* factor weighs in Quintana-Islas's favor, Lowe's mandatory detention of Quintana-Islas under § 1225(b)(2)(A) violates Quintana-Islas's procedural due process rights.[4] Accordingly, Quintana-Islas's petition for writ of habeas corpus is **GRANTED**, and Lowe is **ORDERED** to release Quintana-Islas from custody.[5]

---

[4] The Court notes that Quintana-Islas also claims that his mandatory detention without opportunity for bond violates his substantive due process rights. (Doc. 1, at 20). As the Court orders release based on procedural due process violations as weighed by the *Mathews* test, the Court declines to address Quintana-Islas's substantive due process claims at this time. *See Bethancourt Soto v. Soto*, 2025 WL 2976572, at *9 n. 6.

[5] The Court also notes that Quintana-Islas also seeks relief in the form of attorney's fees and costs. (Doc. 1, at 15). The Court cannot award attorney's fees without first assessing

## V.    CONCLUSION

For the foregoing reasons, Quintana-Islas's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Quintana-Islas from custody. Lowe is barred from re-detaining Quintana-Islas under § 1225(b)(2)(A) absent a material change in circumstances. Quintana-Islas may move to reopen this matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

**BY THE COURT:**

**Dated: May 29, 2026**                    /s/ Karoline Mehalchick
**KAROLINE MEHALCHICK**
**United States District Judge**

---

affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016) (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025) (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Quintana-Islas must request attorney's fees in a separate motion with accompanying exhibits.